[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-13720

Non-Argument Calendar

————————————————

CHARNESHA ALEXANDER,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,
PAUL ROLSTON,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket Nos. 4:19-cv-00138-RH-MAF,

4:18-cv-00177-RH-MAF

_____

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Charnesha Alexander appeals the judgment in favor of defendants Paul Rolston and the United States after trial on her claim that she was sexually abused by Rolston, a physician assistant at FCI Tallahassee, during a medical examination at the federal prison in September 2016.  She sued Rolston individually under *Bivens*[1] for violating her Eighth Amendment right to be free from cruel and unusual punishment.  And she brought claims against the government under the Federal Tort Claims Act ("FTCA") for negligence and vicarious liability. A jury heard the claim against Rolston and returned a verdict in his favor.  The FTCA claims were submitted for a bench trial to the district court, which entered judgment for the government.  Alexander appeals, challenging the district court's handling of various evidentiary matters at trial and its resolution of the FTCA claims.  After careful review, we affirm.

## I.

In March 2019, Alexander filed a § 1983 lawsuit alleging that she was sexually abused by Physician Assistant Rolston during a

_____

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

medical examination on September 27, 2016, while she was a federal prisoner at FCI Tallahassee.  She asserted that Rolston's sexual abuse amounted to cruel and unusual punishment under the Eighth Amendment, and that the government was both negligent for failing to protect Alexander and vicariously liable for Rolston's conduct as his employer.

Alexander's case went to trial in hybrid form.  A jury heard her claim against Rolston individually.  Her FTCA claims against the government, plus some additional evidence not given to the jury, were submitted to the district court for resolution by bench trial.  *See* Fed. R. Civ. P. 52.

## A.

Before diving into the details of the trial, we start with some of the district court's pretrial evidentiary rulings, which are relevant to several issues on appeal but which Alexander does not directly challenge.  In June 2021, following pretrial and status conferences in May 2021, the court entered a pretrial order ruling on the parties' motions in limine and other matters.

In relevant part, the district court put limits on the evidence Alexander could present or elicit at trial.  The court prohibited Alexander from mentioning to the jury "Rolston's reputation among inmates and comments about [him]," the history of assaults or other misconduct by FCI Tallahassee personnel and any related investigations that did not involve Rolston, and settlements with other alleged victims, among other information.

Nonetheless, the district court allowed evidence of other alleged assaults by Rolston, as well as "the conduct of unnecessary PAP smears by [him], whether occurring before or after the alleged assault of Ms. Alexander." The latter statement refers to two affidavits prepared in connection with a Bureau of Prisons ("BOP") investigation into Rolston. In the affidavits, Letitia Davis, a nursing assistant at FCI Tallahassee, asserted that Rolston conducted Pap tests and anal exams when they were not necessary or wanted, and that half of the Pap tests she observed Rolston perform were unnecessary. The court explained that Alexander could use the evidence to impeach Davis's testimony at trial "with a prior inconsistent statement," but not "as affirmative evidence on its own" because it was hearsay.

## B.

At trial, Alexander testified that Rolston sexually abused her during a medical examination in September 2016. Alexander explained that, while she was a prisoner at FCI Tallahassee, she had requested to see a doctor for a vaginal bacterial infection. By the time she was seen, though, she had used a home remedy to fix the problem, and she informed medical staff that the visit was unnecessary when she arrived. Yet Rolston still wanted to do a Pap test and pelvic exam, even after finding out that Alexander had her period and felt uncomfortable.

During the exam, Alexander felt Rolston touch her clitoris twice in circular motions while he inserted his fingers into her vagina. The nursing assistant and chaperone, Davis, was not

looking at the time. Alexander began to cry once Rolston finished the exam and left the room. As she was crying, Rolston returned and offered to conduct a breast exam, which she refused. Then, while Alexander was waiting to leave the medical area, a guard saw her crying and advised her to "speak up" for herself and others "[i]f he did something to you," which Alexander understood to refer to "the other women that it had happened to that [she] wasn't aware of."

Five other women testified about similar experiences during medical exams conducted by Rolston at FCI Tallahassee. The court repeatedly made clear to the jury that it could evaluate this testimony for only the purpose of evaluating Rolston's intent when examining Alexander. Several women reported that Rolston touched their clitoris, sometimes with circular motions, during a pelvic exam or Pap test. A few said he squeezed their breasts or pinched their nipples during breast exams in ways that felt inappropriate. Many of these witnesses also testified that they did not report the sexual abuse for fear of retaliation or loss of privileges. Because of complaints by Alexander and others, Rolston was transferred to a men's facility.

Rolston testified in his defense and called several witnesses, including supervisors and coworkers. After a brief rebuttal witness, the case against Rolston was submitted to the jury. The jury returned a verdict for Rolston, finding he did not engage in a sexual act or sexual contact during his exam of Alexander.

## C.

After Alexander rested her case, the government moved for judgment on the two claims against it.  The district court noted that it could "find facts" on its own as to those claims, in contrast to the claim against Rolston, which was for the jury.  The court heard argument from the parties and then entered judgment for the government.

On the battery claim, the district court found that if Rolston committed the sexual acts alleged, he was not "doing the government's business" or a "slight deviation" from that business, but rather a "profoundly different undertaking than what he was hired to do and could appropriately do."  So, in the court's view, the alleged conduct was outside the scope of both his employment and the government's vicarious liability.

On the negligence claim, the district court concluded that there was "no failure to use reasonable care" that harmed Alexander.  The court explained there was no evidence that the government was aware Rolston had been accused of sexual misconduct before July 2016, when an inmate named Shendolyn Blevins complained that Rolston had touched her breasts through her shirt without a chaperone present.  The court noted, however, that during the prompt BOP investigation of her complaint, Blevins "said very clearly nothing inappropriate happened during the exam," and that she just wanted a female provider or chaperone.  Because Blevins denied improper sexual contact, the court reasoned that the government was not negligent in allowing Rolston to continue

to perform "well woman" exams.  The court also noted that Alexander was not harmed by the lack of a female chaperone because one was present for her exam with Rolston.

## II.

We start with the district court's evidentiary rulings, which we review for an abuse of discretion.  *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1317 (11th Cir. 2013).  The court has broad authority to control the admissibility of evidence and the manner of examining witnesses.  *United States v. Pon*, 963 F.3d 1207, 1223 (11th Cir. 2020); *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 556 (11th Cir. 1998); *see* Fed. R. Evid. 611(a).  The abuse-of-discretion standard allows "a range of choice for the district court," so long as the court does not make a mistake of law or a clear error of judgment.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1103–04 (11th Cir. 2005).

Even where a district court abuses its discretion on an evidentiary issue, relief is not warranted unless "substantial rights were affected."  *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007).  That standard is met only if "the error probably had a substantial influence on the jury's verdict."  *Id.* (quotation marks omitted).

Alexander contends that the district court abused its discretion in handling five evidentiary issues, which resulted in an unfair trial, but we are not persuaded.  We consider each issue in turn.

## A.

First, the record does not support Alexander's claim that she was "never permitted to explore reasons why a prisoner might be afraid to decline unwanted care."

The trial transcript shows that the district court allowed Alexander to inquire about these matters so long as the testimony was limited to "why the witness did what the witness did" and was not simply a conduit for rumors. For instance, Alexander testified that she did not feel free to decline treatment in prison because "it's what they say" and "[y]ou are up under their rules." Blevins testified that she "didn't question" the medical staff or Rolston "[b]ecause [she] didn't want to go to the SHU," or the Special Housing Unit, and the jury heard why the SHU was less desirable. Another witness, Daphne Rodriguez, testified that she had suffered retaliation after disagreeing with prison medical providers, stating that "[t]hey don't help you at all" and will ignore your requests for treatment. In addition, multiple witnesses testified about fear of retaliation or loss of privileges for reporting sexual abuse in prison.

Alexander cites two instances where the district court purportedly "shut her counsel down" when inquiring why inmates might be afraid to decline care or report abuse. But in those

instances, the court appears to have simply sustained narrow objections to specific questions, not imposed any broad prohibitions.[2]

In one instance, the district court sustained two objections to questions of Alexander about refusing medical treatment at FCI Tallahassee as leading, and Alexander does not dispute that the questions were leading as phrased. Moreover, the questions lacked foundation because Alexander had not yet testified about her examination with Rolston or whether she felt free to decline Rolston's conduct.

In the other instance, a witness was permitted to describe in general terms the negative consequences she suffered after disagreeing with prison medical providers. But the district court prohibited counsel from inquiring about "specific episodes of that kind of problem." Because that witness's testimony was admitted "only for the purpose of evaluating Rolston's intent," her specific interactions with prison officials other than Rolston were not relevant to the issues at trial and instead could have confused the issues and wasted time. We cannot say that the district court abused its discretion in excluding this evidence.

---

[2] At some points in the trial transcripts, the basis for or fact of an objection are not apparent. The district court addressed this matter at trial, explaining that "there will be a number of places where I have said 'sustained' without the transcript [saying] that anybody said 'objection'. Because you were standing up, and it seemed clear to me what the objection was, and so I said 'sustained.'" We therefore look to the surrounding context to inform our analysis of the court's rulings.

### B.

Nor did the district court abuse its discretion in exercising control over the examination of Davis, a nursing assistant at FCI Tallahassee. As we noted above, Davis prepared affidavits for purposes of a BOP investigation stating her opinions that Rolston conducted Pap tests and anal exams which were not necessary or wanted, and that half of the Pap tests she observed Rolston perform were unnecessary. Alexander called Davis as a witness during her case-in-chief, and her counsel began asking Davis about the prior statements in the affidavits on direct examination without first eliciting testimony about the matters covered in the affidavits.

The district court sustained multiple objections to this line of inquiry, ultimately advising Alexander's counsel, "You may ask her on the stand what her testimony is. You may not ask her first what her testimony was at some other time." The court then permitted counsel to ask over objection, "Do you believe that Paul Rolston did Pap smears 50 percent of the time that were unnecessary?" Davis responded indirectly that prisoners were frequently "scheduled for something else but when [Rolston] looked in the computer he would say that they would need a Pap smear" as well. Alexander's counsel did not seek further clarification or elaboration of this response, nor did he attempt to impeach Davis at that time with her prior statements.

Here, Alexander has not shown an abuse of the district court's discretion. In Alexander's view, the court erred in excluding Davis's affidavits as hearsay because they were prior

inconsistent statements admissible to impeach her.  *See United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007) ("[P]rior inconsistent statements of a witness are admissible to impeach that witness.").  But as the district court explained, counsel attempted to ask Davis about the content of the prior statements on direct examination without first eliciting testimony that was inconsistent with those statements.  The court previously had warned counsel he could not introduce Davis's "out-of-court-statement[s] as affirmative evidence on its own."  In our view, the court reasonably required counsel to first elicit testimony at trial inconsistent with Davis's prior statements before asking her about them.  Indeed, a witness cannot be impeached if she has not testified in a way that is inconsistent with the prior statement the questioner seeks to use to impeach her.

Alexander maintains that it was proper to impeach Davis on her response denying that she "ma[d]e any critical comment about the way [Rolston] does Pap smears" and stating that she "just said he did them different from what I saw other providers do them." We disagree.  Counsel had not asked Davis any questions about her views on the way Rolston did Pap tests or the necessity of the procedures he conducted.  So again, there was no basis to impeach testimony on those points with prior statements.  Nor is it apparent that Davis's testimony was inconsistent with the statements in her affidavit, which likewise stated that she had never seen a medical provider perform Pap tests like Rolston.

## C.

We see no support in the record for Alexander's claim that the district court prevented her from rebutting testimony about training on or implementation of the Prison Rape Elimination Act ("PREA").  Again, Alexander mischaracterizes the court's rulings.

During cross-examination of Rolston, the district court prevented Alexander's counsel from asking about "complaints of sexual violations at FCI by other officials" than Rolston.  It then instructed the jury that whether "there had been violations of the Prison Rape Elimination Act by other officials at the institution" had "absolutely nothing to do with this case," which was solely about what "Mr. Rolston might have done."  But the court permitted counsel to question Rolston generally about reporting PREA complaints by inmates, and it said counsel could also inquire about the incidents described in witness testimony.  The court's actions are consistent with its pretrial evidentiary rulings, which Alexander does not directly challenge on appeal.  We see no abuse of the court's discretion.

## D.

The district court did not abuse its discretion by admitting reputation testimony supporting Rolston while excluding evidence of his reputation in prison.

As part of his defense, Rolston called several witnesses to offer testimony about his work performance and professionalism based on personal knowledge as his coworkers or supervisors.

During cross-examination of one of these witnesses—Harold White, the assistant health service administrator at FCI Tallahassee—the district court sustained objections to the question, "Have people come to you and said that he has multiple women complaining about him?," and an attempted follow-up question.

Outside the jury's presence, the district court explained that these questions violated the pretrial order's prohibition on the jury hearing evidence of Rolston's reputation among inmates or comments about him. Alexander's counsel argued that the questions were relevant to the case because "one of the nurses had reported to [White] that there were complaints." The court responded that relevance was not an excuse to violate the pretrial order, and that, if counsel had grounds for believing "this ought to be admitted, the way to deal with it is to raise it with me outside the jury's hearing." It does not appear the issue was raised again.

Alexander contends that Rolston opened the door to inquiry into Rolston's reputation by offering witness testimony about his professionalism and sterling reputation. Her briefing, however, fails to identify an instance where the district court prevented questioning of Rolston's witnesses about the specific allegations by Alexander and the other women who testified at trial. *See* Fed. R. Evid. 405(a) ("On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct."). Plus, even assuming the questions by Alexander's counsel were valid impeachment and would justify overriding the pretrial order, there was no abuse of discretion because, as

the court directed, the matter should have been raised with the court beforehand.

Alexander's real complaint appears to be the district court's pretrial ruling that she could not offer testimony about prison rumors or Rolston's reputation in prison. In particular, the court barred Alexander from offering evidence that it was "common knowledge among the inmates that Rolston performed unnecessary pelvic exams and took sexual liberties in the course of those exams." In refusing to admit this testimony, the district court explained that "we don't try cases on rumors," and that the rumor evidence was not based on personal knowledge.[3] Alexander offers no rebuttal to the court's explanation and has not shown that the court made a clear error of judgment or a mistake of law by excluding this evidence.

Moreover, even if the district court abused its discretion by improperly limiting cross-examination of White to show that "White did nothing," Alexander has not shown that this "error probably had a substantial influence on the jury's verdict." *Proctor*, 494 F.3d at 1352. White was a brief witness in the three-day trial and one of several witnesses who testified about working with or supervising Rolston. His testimony was not so significant that it prejudiced Alexander, even assuming the court should have

---

[3] Nevertheless, the district court permitted "evidence that anybody that worked for the Bureau of Prisons ever heard the rumor" only for the claims against the government.

permitted inquiry into White's knowledge of complaints against Rolston. As the district court repeatedly emphasized, the actions of other prison official like White were not relevant to the issue before the jury, which concerned what happened during the exam in September 2016. So evidence that "White did nothing" in response to complaints about Rolston would have properly been excluded as irrelevant and confusing. And we see no indication more broadly that Alexander was prevented from effectively impeaching Rolston's witnesses.

## E.

Finally, Alexander claims that the district court should have excluded, under Rules 403 and 408, Fed. R. Evid., evidence that Alexander filed a claim with the government—a presuit requirement under the FTCA—for $5 million in damages arising from the events involving Rolston. The parties dispute whether the damages request on an FTCA claim form is subject to Rule 408, which generally prohibits evidence of compromise offers or negotiations, but we need not resolve that issue. Even assuming Rule 408 applies, that rule excepts evidence admitted "for another purpose, such as proving a witness's bias or prejudice." Fed. R. Evid. 408(b).

Here, the evidence was offered for impeachment purposes on cross-examination and was arguably relevant to Alexander's valuation of her claim and her biases as a witness. *See United States v. Hall*, 653 F.2d 1002, 1008 (5th Cir. Aug. 1981) ("[A] witness's motivation for testifying, as well as any potential incentives for

falsification, are always relevant lines of inquiry.").[4] Alexander has developed no supporting argument for her assertion that the evidence should have been excluded under Rule 403 as substantially more prejudicial than probative. In any case, we are not persuaded that any error on this point, which was a brief, isolated point on cross-examination, had a prejudicial effect on the trial.

## F.

More broadly, Alexander maintains that the district court's evidentiary errors resulted in a one-sided presentation of the evidence and denied her a fair trial. But on closer inspection, her bold claims of error, and at times her descriptions of the court's actions more generally, are simply not supported by the record. Rather, the record reflects that the district court made and enforced clear, reasonable guidelines about permissible evidence and questioning, within which Alexander was afforded a full and fair opportunity to present her case. No trial is perfect, and any evidentiary errors in this case, in our view, fall well short of showing an effect on her substantial rights. *See Proctor*, 494 F.3d at 1352; *see also McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) ("This Court has long held that a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials.") (cleaned up).

---

[4] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

For these reasons, we affirm the judgment for Rolston.

### III.

Next, we consider the FTCA claims, which were resolved by bench trial. "On appeal from a bench trial, the district court's conclusions of law are reviewed de novo, but its findings of fact shall not be set aside unless clearly erroneous." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (cleaned up). A factual finding is clearly erroneous if, based on the record as a whole, we are confident that the court made a mistake. *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007). But if the court's account of the evidence is reasonable, we must affirm. *Id.*

### A.

Alexander argues that the district court erred in evaluating her FTCA negligence claim by focusing solely on the "74 days" between Blevins's complaint and Alexander's examination. In her view, evidence of a broader "culture of impunity" at FCI Tallahassee with regard to sexual abuse by staff, including lengthy delays in investigating Alexander's and others' allegations of sexual abuse, foreseeably led to the harm she suffered.

The FTCA permits claims against the government for "violations of state law by federal employees." *Shivers v. United States*, 1 F.4th 924, 928 (11th Cir. 2021). To succeed on a claim of negligence under Florida law, "a plaintiff must establish the four elements of duty, breach, proximate causation, and damages."

*Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015). Whether a duty exists is a legal question, but "the remaining elements of negligence—breach, proximate causation, and damages—are to be resolved by the fact-finder." *Id.*

Alexander's briefing largely sidesteps the reasons for the district court's ruling in favor of the government on her negligence claim. The court found, in relevant part, that there was no evidence of complaints about sexual misconduct by Rolston before July 16, 2016, when an inmate, Blevins, complained that he conducted a breast exam through her shirt without a chaperone present. So, according to the court, the "whole question" was whether the government "use[d] reasonable care between that date and September 27th, 2016, when Ms. Alexander had her examination."

On that question, the district court noted that Blevins later "said very clearly nothing inappropriate happened during the exam." As a result, the court reasoned, it was "not negligent for the government to allow Mr. Rolston to continue to conduct well woman" exams. The court further explained that, even if the government had been negligent to allow Rolston to have previously conducted an exam without a same-sex chaperone present, Alexander did not suffer any resulting harm because a chaperone was present for her examination. Accordingly, the court determined that there was "no failure to use reasonable care" that harmed Alexander.

Here, Alexander has not shown that the district court committed a legal error or made clearly erroneous factual findings. We

reject the claim that the court improperly "clos[ed] the door on the past conduct of Rolston at FCI Tallahassee." The court explained that Alexander was free to present evidence against the government "that anybody that worked for the Bureau of Prisons ever heard the rumor" that "Rolston is a sexual abuser" before the assault on Alexander. But as Alexander's counsel admitted in the district court, there was "[n]o evidence of any allegation against Mr. Rolston before the assault on Ms. Alexander," apart from Blevins's complaint. We also see no reason to second-guess the court's ruling that evidence of what prison officials heard or did after Alexander's September 27, 2016, exam was not relevant to what they should have done before that date, which is what the negligence claim was about. Negligence committed after Alexander's injury could not have foreseeably caused that injury.

Despite her broad claims of a "culture of impunity" at the prison, Alexander identifies no evidence that would have given prison officials reason to credibly suspect Rolston of sexual abuse at the time he examined her. She admits it was "not . . . clearly erroneous" for the court to find that Blevins, after making the complaint, "said very clearly nothing inappropriate happened during the exam." Because the sole complainant before Alexander had denied sexual misconduct, the court reasonably concluded that the government did not breach a duty to Alexander and others by permitting Rolston to continue performing "well woman" exams, so long as a chaperone was present. *See Morrissette-Brown*, 506 F.3d at 1319; *Limones*, 161 So. 3d at 389.

## B.

Next, Alexander challenges the district court's conclusion that the government was not vicariously liable under the FTCA because any battery committed by Rolston against Alexander was outside the scope of his employment.

Under the FTCA, the government's vicarious liability is limited to instances where a government employee was "acting within the scope of his or her employment." 28 U.S.C. § 1346(b). "[W]hether an employee's actions are within the scope of his employment for purposes of the [FTCA] is an issue governed by the law of the state where the incident occurred." *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1542 (11th Cir. 1990), *amended*, 924 F.2d 1555 (11th Cir. 1991). Because the incident here occurred in Florida, that state's law governs.

Under Florida law, an employee's conduct is "within the course and scope of employment when it (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master." *Goss v. Human Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012). Applying this three-part test, Florida court have generally held sexual torts "to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer." *Id.* (quotation marks omitted); *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 2012).

Alexander maintains that Rolston's alleged conduct of "[r]ubbing the clitoris without a medical purpose" could be described as a "slight deviation" from the government's business, not an abandonment of it, and that Rolston "intersperse[d] actual work in the employer's behalf with actionable sexual conduct." She cites case law indicating that such "dual purpose" conduct by employees may be within the scope of employment.

Yet, importantly, Alexander concedes that it was for the "factfinder" to resolve whether Rolston's conduct was within the scope of his employment. And here, the factfinder was the district court, *see* Fed. R. Civ. P. 52, which found that the alleged sexual battery was *not* motivated by a purpose to serve the government's business, and that it was a "profoundly different undertaking than what he was hired to do and could appropriately do."

We are not convinced that the district court clearly erred in finding that Rolston's alleged sexual abuse was outside the scope of his employment. *See Morrissette-Brown*, 506 F.3d at 1319. Rather, the record supports the court's findings that the alleged sexual abuse was not the kind of conduct Rolston was hired to perform and was not motivated in any way by a purpose to serve the government. Those findings are also consistent with how Florida law generally treats sexual torts by employees. *See Goss*, 79 So. 3d at 132 ("[T]he sexual assault was not within the course and scope of her employment because the act was not in furtherance of her employment."). So even assuming the record supported a contrary

finding, the district court's view of the evidence was not clearly erroneous. *See Compulife Software*, 959 F.3d at 1301.

## IV.

For these reasons, we affirm the judgment for Rolston on Alexander's Eighth Amendment claim and for the government on her claims under the FTCA.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 15, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-13720-CC
Case Style:  Charnesha Alexander v. USA, et al
District Court Docket No:  4:19-cv-00138-RH-MAF
Secondary Case Number:  4:18-cv-00177-RH-MAF

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system,
unless exempted for good cause. Although not required, non-incarcerated pro se parties are
permitted to use the ECF system by registering for an account at www.pacer.gov. Information
and training materials related to electronic filing are available on the Court's website.

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been
entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with
FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against the appellant</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at <u>www.ca11.uscourts.gov.</u>

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Carol R. Lewis, CC</u> at <u>404-335-6130</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs